IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Billy Nathan Lee, # 229707, )<br>)<br>)<br>       Petitioner, )<br>)<br>  vs. )<br>)<br>Leroy Cartledge, )<br>)<br>)<br>       Respondent. )<br>_____ ) | Civil Action No. 6:15-1603-BHH-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

   The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

## BACKGROUND

   The petitioner is currently incarcerated at the McCormick Correctional Institution in the South Carolina Department of Corrections ("SCDC").  The petitioner was indicted by the Horry County Grand Jury in May 2006 for murder (app. 634–35).  James Galmore of the Fifteenth Circuit Public Defender's Office represented the petitioner at a jury trial before the Honorable Steven H. John, South Carolina Circuit Court Judge, on March 3, 2009.  The State was represented by Fifteenth Circuit Assistant Solicitor Scott Hixson (app. 227–30).  The jury convicted the petitioner of murder.  The petitioner was sentenced by Judge John to forty years imprisonment with credit for time served (app. 1).

### Underlying Case Facts

The following relevant facts were presented at the petitioner's trial and in his direct appeal. On March 4, 2006 at 6:48 p.m., Horry County Police Officer[1] Joseph Neff was dispatched to a location near the Atlantic Beach Christian Methodist Church to investigate a shooting (app. 124). When Officer Neff passed the church and turned back around he "noticed a female victim lying partially in the roadway in a pool of blood" (app. 125–26).[2] The victim was the petitioner's ex-girlfriend (app. 105–07). The petitioner laid the gun down by the victim's body, got in his van, drove in a circle, and returned to the churchyard (app. 353). The van was later found to have blood splatter from the victim on the right rear quarter panel and rear passenger side wheel. There were also bloody tire impressions on the street near the church and near the victim's body (app. 168–72). There was evidence that the body had been moved (app. 173).

Officer Neff testified that the petitioner came toward him with his hands in the air stating, "I did it, I'm the shooter" (app. 126). The petitioner later testified that he "came out and I had my hands in the air and I said, I'm the man, I'm the person you are looking for" (app. 355). The petitioner recalled that, as he was being put in the police car, "Ms. [Pastor] Price came to the door and I was yelling at Ms. Price, I said, it's your fault. I said it's your fault . . . you [try] to break up every relationship" (app. 355–56). The petitioner said Price responded by yelling: "You killed her, you killed her." Price, however, did not witness the shooting (app. 356).

Lequesha Lewis also testified at trial and remembered there was a church play scheduled for that Saturday night, March 4, 2006 (app. 204– 06). Lewis testified that she saw the petitioner and the decedent "outside in the church yard" before the play. She

---

[1]*See Henry v. Horry Cnty.*, 514 S.E.2d 122, 122 (S.C. 1999) ("Horry County has two law enforcement agencies: the Horry County Sheriff and the Horry County Police Department.").

[2]The original trial transcript (app. 1–446) appears in all capital letters.

said the petitioner was "like forcing her by her clothes telling her to come with him, just get in the van and talk to him . . ." Lewis further testified that the decedent told the petitioner that she did not want to talk to him or get into his van (app. 208).

Lewis recalled that as she approached the couple to ask them "What was the problem?" she heard "the gun cock." Lewis admitted she did not see the petitioner with a gun: "I don't even recall hearing the shot . . ." Lewis next saw the decedent on the ground: "I don't know . . . if they was physical fighting and he knocked her on the ground at that time or if she had already been shot [and] then I was inside the church" (app. 209).

Lewis claimed she saw the petitioner hit the decedent a couple of times, and then she saw the decedent "laying on the side of the street" (app. 210–11). Lewis also said the petitioner was pushing and shoving the decedent: "I mean he had her like forcing her, pulling her and I seen [*sic*] him hit her a couple of times. I seen [*sic*] him strike her again with his hand a couple of times" (app. 216).

The pathologist, Dr. Edward Proctor, testified the decedent died of a single gunshot to the left cheek. Dr. Proctor said the gun was less than an inch away from the decedent's cheek when it discharged (app. 186–89).

The petitioner took the stand in his own defense. He told the jurors the gun discharged accidentally:

> Just like I was saying· from beginning everything was an accident. I can't play things back to you, I can only tell you what happened. It was an accident. When I pulled that gun out talking to Carma, telling Carma, please, I said, Carma, please come, please get in the van, please come back. When Carma went to pull, to move her hand with the gun that gun went off. That's all I can tell you and when that gun went off·something went deep inside me that I've never seen before. All I could see was blood gushing from a person that I care and love and when she fell I went down also to touch to see if she was down.

* * *

3

> When Carma pushed my hand back, when Carma pushed my hand the gun went off but I don't how but I all I can tell you the gun went off and that's all I know. I did not pull the trigger. I did not pull the trigger.  I stand before you today, I'm not worried about the time, all I'm worried about is that family right there. Do not walk away from here today thinking that I killed their daughter.  I'm not worried about no time but I'm worried about this family walking away today with a lie in their heart for the rest of their life.  If it was satisfy anybody give me life but I don't them walking away today thinking that I killed their daughter cause they will have to live with that for the rest of their life.  I did not·kill their·daughter. I did not kill somebody they loved.  It was an accident. It was a bad stupid choice of mine. I'm not sitting here telling you today that I'm innocent and didn't bring that gun, I'm not telling you that, but I'm telling you I did not pull the trigger.

(App. 346–50).

### Direct Appeal

The petitioner timely appealed his conviction and sentence (app. 483).  Robert Dudek of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented the petitioner on appeal and briefed the following issue pursuant to *Anders v. California*, 386 U.S. 738 (1967):

> Whether the court erred by refusing to charge involuntary manslaughter where appellant testified he was only talking to his girlfriend when the gun accidentally discharged, and that he did not pull the trigger, since appellant's testimony entitled him to a jury instruction on involuntary manslaughter?

(App. 485–500).  The South Carolina Court of Appeals dismissed the direct appeal and relieved Mr. Dudek as counsel by unpublished opinion No. 2010-UP-099, filed February 4, 2010 (app. 501–02).   The South Carolina Court of Appeals issued its remittitur on February 22, 2010 (app. 503).

### PCR

The petitioner filed a *pro se* post-conviction relief ("PCR") application on August 5, 2010 (Case No. 2010-CP-26-07149).  The petitioner's PCR counsel, Carla

4

Graber-Lowenstein, filed amendments to the application on October 19, 2011, and on August 10, 2012 (app. 520–27). The petitioner raised the following issues within the sum of his PCR filings:

> (1) Ineffective assistance of counsel
>
>> a. Failure to object
>>> i. To the State's leading questions on direct examination
>>> ii. To hearsay
>>> iii. To preserve issues for appeal
>>
>> b. Failure to move to suppress evidence
>>
>> c. Failure to investigate
>>
>> d. Failure to advise of Miranda rights
>>
>> e. Failure to present witnesses
>>> i. Including failure to present a ballistics expert to corroborate Petitioner's version of events
>>
>> f. Failure to rebut State's evidence
>>
>> g. Failure to present fingerprint evidence
>>
>> h. Failure to object to admission of evidence without establishing chain of custody
>
> (2) Trial court error
>
>> a. Implied malice instruction issued in error
>>
>> b. Directed verdict motion denied in error

(App. 504–27). On behalf of the State, Assistant Attorney General Christina Catoe made the return (app. 528–32) on September 24, 2010.

Ms. Graber-Lowenstein represented the petitioner at an evidentiary hearing occurring on August 27, 2012, before The Honorable Thomas A. Russo, South Carolina Circuit Court Judge. The petitioner, his trial counsel, and ballistics expert Christopher

5

Robinson testified. Tyson Andrew Johnson, Sr., appeared on behalf of the State (app. 533–34).

In his Order of Dismissal filed September 13, 2012, Judge Russo found that the petitioner failed to establish "any constitutional violations or deprivations that would require [the PCR] court to grant his application," denied and dismissed the petitioner's PCR application with prejudice, and remanded the petitioner to the custody of the respondent (app. 623–30).

***PCR Appeal***

The petitioner's PCR counsel timely served and filed a notice of appeal. In his petition for writ of certiorari to the South Carolina Supreme Court, Breen Stephens of the South Carolina Commission on Indigent Defense, Division of Appellate Defense presented the following issue:

> Whether Counsel provided constitutionally deficient performance for failing to independently investigate and call an expert witness to corroborate Petitioner's trial testimony that a struggle between Petitioner and the decedent over the gun in question caused it to fire?

(Doc. 13-6).

The State made its return on July 26, 2013. The case thereafter transferred to the Court of Appeals. In an order filed February 3, 2015, the South Carolina Court of Appeals denied certiorari (doc. 13-8). The Court of Appeals issued its remittitur on February 19, 2015, and the Clerk of Court for Horry County filed the remittitur on February 24, 2015 (docs. 13-4 and 13-9).

## FEDERAL PETITION

On April 17, 2015, the petitioner filed his § 2254 petition (doc. 1). The undersigned on April 20, 2015, authorized service of the petition. On June 12, 2015, the respondent filed a motion for summary judgment (doc. 12). By order filed the same date,

pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion (doc. 14). On August 14, 2015, the petitioner filed a response in opposition to the motion for summary judgment (doc. 24).

In his federal petition, the petitioner makes the following claims (verbatim):

**Ground One:** S.C. Appeal Court

**Supporting Facts:** The Court erred by denying Appellant's request for jury instruction on Involuntary manslaughter

**Ground Two:** Ineff[e]ctive Assistance of Counsel

1. Defense counsel was ineffective by failing to object admission of evidence without a proper foundation and or chain of custody.

2. Defense counsel was ineffective in failing to object to prosecutions line of leading questions on direct examination.

3. Defense counsel is ineffective in failing to object to the admission of hearsay evidence that does not fall within an exception

4. Defense counsel was ineffective in not exploring an expert testimony based on bolitics [*sic*].

**Supporting Facts:** Post conviction counsel was ineffective by failing to raise issues that was to be raised at the hearing. Counsel Graber, Lowenstein. St[a]ted in [Tr. Pg. 70, volume two of two [PCR] Transcript. Line .23- 25.] ["]Frankly I made the decision that there would,t [*sic*] be other thing discussed because I felt it would muddy things up.["]

Trial counsel failure to present evidence at PCR hearing. Months before the P.C.R hearing . . . I had discuss[ed] with counsel about presenting all of the ground that I had prepared for the hearing. Counsel agreed that I would have the chan[c]e to present them. However, at the PCR hearing, counsel had abandoned me without having any evidence to present at the hearing. Because of the abandonment, other grounds that was raised at the PCR, was waived.

7

1. Trial counsel failed to object and motion to suppress the alleged confession that was extremely prejudice and unfair because of the very unique circumstances that was surrounding the inoperable that equipment that was introduced into evidence.

2. Trial counsel failed to adequately conduct discovery investigation that there were other evaluations that was relevant to the rebuttal of the case beside the court ordered evaluations

3. Counsel failed to inform the [defendant] prior to competency evaluation that there were also an evaluation for criminal responsibility that I would have the right to remain silent without counsel being there. There was never a Miranda warning in the evaluation of the criminal responsibility

4. Trial counsel failed to call relevan[t] defense witnesses in behalf defendants['] witnesses would have testified that they were there before and after the alle[g]ed murder. Showing that there was not any malice or aforethought in this case

5. Counsel failed to present a coherent argument based on police fabrication of the real event that took place on [M]arch 4[,] 2006, at the crime scene. Officer [N]eff shifted the burden of proof by interpreting a inoperable audio, video, dash mou[n]ted camera and disresrding[sic] the fact finder of equipment operating simu[l]taneously.

6. Trial counsel failed to pursue relevant court ordered finger perint [*sic*] evidence from gun that was ordered APRIL 24, 2007. By the HONORABLE GIDGEE NOTTINGHAM at arraignment. Special agent] [Pa]avel stated that there was a small amount of black finge[r]print evidence introduced at trial from SLED and horry county police department. That would have been relevant to defendants defense.

(Doc. 1 at 5–7; doc. 1-1).

## **APPLICABLE LAW AND ANALYSIS**

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is

deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non–movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non–moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non–moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc's Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### *Exhaustion*

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. §§ 17-27-10, -90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976). If the PCR court fails to address a claim as is

9

required by South Carolina Code § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[3]

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan [v. Boerckel*, 526 U.S. 838 (1999)]." 559 S.E.2d at 854. Accordingly, a claim would not be procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals, either after a direct appeal or after pursuing relief in a PCR petition.

A habeas petitioner must first present his or her claim to the court in a manner in which it may be reviewed on the merits. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). It is well settled in South Carolina that "[i]ssues not raised and ruled upon in the trial court will not be considered on appeal." *State v. Dunbar*, 587 S.E.2d 691, 693–94 (S.C. 2003). Moreover, it is not enough that the argument presented stems from the same factual scenario; rather, the legal argument must be the same as the argument presented below. *See, e.g., State v. Haselden*, 577 S.E.2d 445, 448 (S.C. 2003) (finding differing ground for objection did not preserve issue presented for review: defendant's objection on relevancy did not preserve argument the evidence was

---

[3]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

improper character evidence); and *State v. Caldwell*, 662 S.E.2d 474, 482 (S.C. Ct. App. 2008) ("Because the argument raised on appeal does not appear to have been specifically raised below, it may not be preserved on appeal.").

The petitioner has exhausted his direct appeal remedy as he timely filed a direct appeal, which was dismissed by the South Carolina Court of Appeals on February 4, 2010 (app. 500–02).  The petitioner also timely pursued and exhausted his PCR remedy as a matter of right. *Wade v. State*, 559 S.E.2d 843, 847 (S.C. 2002) ("An individual under PCR effectively is granted one chance to argue for relief and must do so within a year of his final appeal"); *Gibson v. State*, 495 S.E.2d 426, 428 (S.C. 1998) (exhaustion of state PCR remedies requires "filing of an application, the rendering of an order adjudicating the issues, and petitioning for, or knowingly waiving, appellate review").  The PCR court dismissed his application, and the petitioner appealed.  The South Carolina Supreme Court denied certiorari on February 3, 2015 (doc. 13-8). Thus, the petitioner has no PCR remedies available to him on these matters.

### *Procedural Bar*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts.  In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the Supreme Court has explained:

11

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'" *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)). To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999). "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent. However, "actual innocence" requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

The petitioner's claims of ineffective assistance of trial counsel are not preserved because the petitioner did not appeal any issue related to counsel's performance outside of the ballistics issue. *See Coleman*, 501 U.S. at 735, and *Martinez v. Ryan*, 132 S.Ct. 1309, 1318–19 (2012) (abandonment of a particular issue or issues on PCR appeal simply does not provide cause promoting federal habeas review).

The petitioner's allegations of ineffective assistance of collateral PCR counsel are not cognizable and consequently should not proceed to review on the merits. Alleged infirmities in a state post-conviction action are not matters that may be addressed in federal

habeas actions.  *See* 28 U.S.C. § 2245(i); and *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988).

***Merits***

The petitioner has exhausted both his direct appeal and PCR remedies in this case.  The petitioner raised his one ground for relief in his PCR application and in his *pro se* response to the *Johnson* petition on appeal, and the PCR court ruled upon that ground (app. at 393, 453; doc. 21-10).  Therefore, the petitioner's claim for relief as to counsel's failure to retain a ballistics expert has been preserved for federal merits review.

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

13

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir. 1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo. See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257–58 (4th Cir. 1999).

### *Ground One*

The petitioner first claims that the court erred by denying his request for jury instruction on involuntary manslaughter during his trial (doc. 1 at 5). The petitioner raised this exact claim in his direct appeal, which was dismissed (app. 485–502). At trial, the State argued that the proposed involuntary manslaughter instruction did not fit the facts of the case (app. 395–96).[4] The trial record shows that this was not an involuntary manslaughter case. The petitioner was not otherwise engaged in a lawful act resulting in the victim's death that required an involuntary manslaughter charge (app. 397). As reasoned by the trial judge in denying the proposed instruction, the petitioner engaged in felonious acts by

---

[4]Involuntary manslaughter is defined as criminal negligence or the reckless disregard of the safety of others. S.C. Code Ann. § 16-3-60. It is "the unintentional killing of another without malice while engaged in either (1) the commission of some unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm, or (2) the doing of a lawful act with a reckless disregard for the safety of others." *State v. Sams*, 764 S.E.2d 511, 514 (S.C. 2014).

14

(1) voluntarily possessing a weapon as a convicted felon, (2) pointing and presenting that weapon, and (3) using that weapon to coerce the victim into doing something she would not otherwise do.  As stated by the trial court, "Those actions cannot be considered as not naturally tending to cause death or great bodily harm.  When you voluntarily arm yourself with a weapon and then you use it in a manner and[,] using the testimony of the defendant that he gave from the witness stand, [']I pulled that gun['].  . . . He indicated he wanted her back and he wanted those kids" (app. 398).  The facts align with the petitioner's acting purposefully, not negligently (app. 397–400 (citing *State v. Reese*, 633 S.E.2d 898 (S.C. 2006); *State v. Cabrera-Pena*, 605 S.E.2d 522 (S.C. 2004); *State v. Tyler*, 560 S.E.2d 888 (S.C. 2002); *State v. Young*, 459 S.E.2d 84, (S.C. 1995); *State v. McCall*, 405 S.E.2d 414 (S.C. 1991)).

Furthermore, federal habeas relief is not otherwise warranted on the matter of whether the trial court appropriately refused to charge involuntary manslaughter because the petitioner's trial for murder was not a capital (death penalty) case.  The Supreme Court of the United States has held that in *capital* cases, due process requires a trial court to instruct a jury on lesser-included offenses, if the evidence warrants such a charge. *Beck v. Alabama*, 447 U.S. 625, 637–38 (1980).  The Supreme Court of the United States, however, has not extended the rule in *Beck* to non-capital murder cases, such as the petitioner's trial.  Additionally, the United States Court of Appeals for the Fourth Circuit has not addressed the issue in a published case.  *See Stewart v. Warden of Lieber Corr. Inst.*, 701 F. Supp. 2d 785, 792–93 (D.S.C. 2010) ("The Fourth Circuit has not, in a published opinion, addressed the question of whether due process requires that a trial court instruct a jury on lesser included offenses in non-capital cases."), *appeal dismissed*, *Stewart v. Bodison*, 412 F. App'x 633 (4th Cir. Feb. 17, 2011).

Even so, our Court of Appeals has noted that "'[a] defendant is not entitled to have the jury instructed as to lesser degrees of the crime simply because the crime charged

15

is murder.'" *Bates v. Lee*, 308 F.2d 411, 418 (4th Cir. 2002) (capital case wherein the defendant sought an instruction for a lesser included offense of second degree murder). The United States Court of Appeals for the Second Circuit, however, has held that a state trial court's failure to get a manslaughter instruction in a non-capital murder case cannot be a basis for the grant of federal habeas corpus relief. *Jones v. Hoffman*, 86 F.3d 46, 48 (2nd Cir. 1996) (holding that "[s]ince a decision interpreting the Constitution to require the submission of instructions on lesser-included offenses in non-capital cases would involve the announcement of a new rule," the court was precluded from considering the issue in a habeas petition), which cites *Teague v. Lane*, 489 U.S. 288 (1989).

Although *Jones v. Hoffman* is not binding in this circuit, this district court has noted that the United States Court of Appeals for the Fourth Circuit, citing *Jones v. Hoffman*, has held, in an unpublished opinion, that instructions for lesser included offenses are not constitutionally required in state court criminal cases:

> Robinson was convicted of felony larceny and other offenses. He asserts that the trial court was constitutionally required to instruct the jury about misdemeanor larceny, a lesser-included offense of felony larceny. As Robinson concedes, however, the Supreme Court has never held that due process requires lesser-included instructions in non-capital state trials. *See Beck v. Alabama*, 447 U.S. 625, 638 n. 14 (1980) (expressly reserving this issue). Moreover, a review of decisions from other courts of appeals establishes that there is no consensus on this question. Consequently, a decision in Robinson's favor would require the enunciation and retroactive application of a new rule, in violation of § 2254(d)(1) and *Teague v. Lane*, 489 U.S. 288 (1989). *See Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996) (holding that lesser-included claim was Teague-barred; *Ramdass v. Angelone*, 187 F.3d 396, 406 (4th Cir. 1999) (noting that § 2254(d)(1)'s retroactivity limitation is more stringent than Teague's), *aff'd*, 120 S.Ct. 2113 (2000). Accordingly, we affirm the district court's order denying relief on this claim.

*Robinson v. North Carolina Atty. Gen.*, No. 99-7530, 2000 WL 1793060, at *1 (4th Cir. Dec. 7, 2000), which is quoted by this district court in *Stewart*, 701 F. Supp. 2d at 793.

16

In non-capital cases, a trial court's refusal to instruct the jury on manslaughter as a lesser-included offense of murder cannot form the basis for habeas relief. *See Stewart*, 701 F. Supp. 2d at 793 ("Accordingly, this Court declines to find that due process requires an involuntary manslaughter instruction in this case. Thus, the Court finds that the state court's decision not to charge on the lesser offense of involuntary manslaughter was not contrary to nor an unreasonable application of clearly established Federal law as decided by the United States Supreme Court, and the Court rejects the Petitioner's claim."), which cites, *inter alia, Cobbs v. McCall*, C.A. No. 6:09-528-CMC-WMC, 2010 WL 936782, at *3 (D.S.C. Mar. 16, 2010) ("Accordingly, this Court declines to find that due process requires an involuntary manslaughter instruction in this case. Thus, the Court finds that the state court's decision not to charge on the lesser offense of involuntary manslaughter was not contrary to nor an unreasonable application of clearly established Federal law as decided by the United States Supreme Court, and the Court rejects the Petitioner's claim."); *cf. Bates v. Lee*, 308 F.3d at 418 ("'The decision of whether there is enough evidence to justify a lesser included offense charge rests within the sound discretion of the trial judge.'"). In light of the aforementioned cases and the absence of a decision from the Supreme Court of the United States on instructions for lesser included offenses in non-capital cases, it cannot be said that the PCR court violated clearly established federal law as decided by the Supreme Court of the United States. *Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008) ("it is Supreme Court precedent, and not Fourth Circuit precedent, to which we look in applying the AEDPA standard of review").

This court is bound by the South Carolina Court of Appeals' dismissal of the alleged trial court error. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). The state court's dismissal on appeal and upholding of the petitioner's conviction is entitled

to deference on federal habeas review, as is the trial court's reason for denying the requested instruction. "The writ of habeas corpus has limited scope; the federal courts do not sit to re-try state cases *de novo* but, rather, to review for violation of federal constitutional standards." *Milton v. Wainwright*, 407 U.S. 371, 377 (1972). State courts are the final arbiters of state law. *See Martin v. Ohio*, 480 U.S. 228, 234–35 (1987); and *McMillan v. Pennsylvania*, 477 U.S. 79, 88–91 (1986). Moreover, given the entirety of the circumstances surrounding the petitioner's trial and the jury instruction rendered, the petitioner's guilt was proven beyond a reasonable doubt. The petitioner confessed to being the triggerman and surrendered upon law enforcement's arrival at the scene of the crime (app. 128). This ground does not warrant relief.

### Ground Two

In Ground Two of his petition, the petitioner raises several ineffective assistance of counsel claims (doc. 1-1). The respondent argues that only one of these claims, that counsel failed to retain a ballistics expert at trial, is preserved for review on the merits. This court agrees. The remaining ineffective assistance claims are procedurally barred as discussed further below.

To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d).  Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

### Failure to Retain Ballistics Expert

As noted in the above procedural bar analysis, this claim constitutes the petitioner's only preserved claim, as it was raised on PCR appeal. When viewed on the merits, however, the petitioner's claim fails to meet the standard warranting relief.  Though trial counsel testified at PCR that he "never explored" the possibility of hiring a ballistics expert as a means of establishing some evidence tending to negate the murder charge before the jury and in plea negotiations (app. 598), the ballistics testimony proffered at PCR failed to demonstrate how the petitioner was prejudiced by any deficiency by counsel.

The petitioner presented ballistics expert Christopher Robinson at the PCR evidentiary hearing, who first testified that a "struggle could have ensued" between the petitioner and the victim (app. 555).  To the petitioner's benefit, Robinson also explained that although one trial witness testified to hearing a gun cock prior to the victim being shot, the particular pistol used was hammerless and was also incapable of being manually

19

cocked. Therefore, he postured, it was impossible for any witness to have reliably heard a gun cock prior to the shooting (app. 544). However, on cross-examination, Robinson conceded many of his earlier points by explaining that the particular pistol required the shooter to manually chamber a round, which cannot be done accidentally (app. 556, 562–63). Also, pulling the trigger would have required the application of several pounds of intentional pressure, regardless of whether Robinson agreed with SLED's trial findings on the specific amount of pressure needed (app. 547–49). Moreover, Robinson pointed out that the absence of gunpowder residue on the victim's hands discredited his own theory that the petitioner[5] and the victim struggled over the gun (app. 552–54). He plainly conceded that based on the ballistics evidence, no evidence showed that the victim pulled the trigger (app. 555–56).

As agreed to by trial counsel during the PCR evidentiary hearing, it may have been helpful for him to hire a ballistics expert to provide an analysis that may have influenced the State to plea bargain, "but [he] wasn't looking at it like that" (app. 598). No prejudice results. In light of this ballistics proffer, counsel may have been "much happier with having [the missing witness] as an empty chair to which he could point, without facing the danger of refutation." *Smith v. Stewart*, 140 F.3d 1263, 1273 (9th Cir. 1998). The ballistics proffer proved inculpatory. Robinson conceded that several pounds of intentional pressure and intentional chamber-loading actions were necessary to fire the exact gun used in the murder's commission. The gunshot could not have been accidentally fired. A petitioner must show a substantial, not just conceivable, likelihood that a different result would have occurred but for counsel's omission. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011). Given the damaging testimony, Robinson's ballistics opinion lacked probative value and proved more prejudicial. It is not substantially likely that Robinson's testimony would

---

[5]At trial, it was determined through expert testimony that the petitioner tested positive for gunshot residue on both of his hands (app. 241).

have garnered the petitioner beneficial results so as to now warrant relief.  When combined with the other evidence presented at trial, the petitioner cannot demonstrate how the failure to retain a ballistics expert prejudiced his defense.  Furthermore, the petitioner intentionally brandished the gun used because he testified both at trial and at PCR that he bought it less than an hour before the murder and carried it with him to scare the victim (app. 350, 574).  Also, an eyewitness testified at trial that the petitioner held the victim up against his van while using threatening words to force her to accompany him.  That witness testified that the victim tried to pull away, not that she tried to grab at the petitioner or the visible gun (app. 208, 211).  The more overwhelming the evidence pointing to a petitioner's guilt, the harder it is for that petitioner to show prejudice. *Cf. Eaton v. Angelone*, 139 F.3d 990, 994 (4th Cir. 1998) (holding no ineffective assistance of counsel where counsel allegedly presented an inadequate case, failed to investigate exculpatory evidence, and failed to admit mitigating evidence during the sentencing phase).  Robinson's conclusions were easily refuted in contravention of any defensive strategy and, when combined with the eyewitness testimony and the petitioner's own admissions, the evidence of the petitioner's guilt was too substantial for the ballistics analysis to overcome.  Thus, the petitioner fails to meet *Strickland's* prejudice prong by alleging counsel's failure to present ballistics testimony in his defense at trial.

Considering the totality of the record, the PCR court reasonably ruled that Robinson's testimony "would have hurt Applicant at trial, not helped him" and that "the testimony of Mr. Robinson fails to establish any possibility that the outcome of the trial might have been different if he had been called as a witness on Applicant's behalf" (app. 627–28).  Considering the facts before it, the PCR did not make an unreasonable application of the *Strickland* standard, and habeas relief is not warranted.

***Failure to Object***

In his petition, the petitioner also alleges his trial counsel was ineffective in failing to object at various points during the trial (doc. 1 at 16). Ineffective assistance claims based on failure to object are tied to the admissibility of the underlying evidence; if evidence admitted without objection was admissible, the petition fails both prongs of the *Strickland* test, as it was neither deficient nor prejudicial. Moreover, the petitioner has failed to prove either deficient performance or resulting prejudice under *Strickland* because *Strickland* does not impose a duty upon counsel to make a frivolous motion. *See, e.g., Almon v. United States*, 302 F. Supp. 2d 575, 586 (D.S.C. 2004) ("There can be no ineffective assistance of counsel for failing to raise a claim which is not legally viable."), *appeal dismissed*, 100 F. App'x 953 (4th Cir. June 22, 2014).

The petitioner first alleges counsel should have objected to the chain of custody, but fails to specify what piece(s) of evidence he is challenging. Similarly, the petitioner alleges counsel should have objected to the State's asking leading questions during direct examination(s) as well as to hearsay testimony. These claims are procedurally barred, but even if they were not, "unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing." *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992). At trial, the State presented at least ten witnesses and introduced two dozen pieces of evidence. Without providing factual support for any of these allegations, the petitioner fails to make a coherent claim of constitutional error, leaving the claims too undefined to warrant relief. *Jones v. Polk*, 401 F.3d 257 (4th Cir. 2005) (speculative and vague allegations will not support habeas claim in federal court); *see also Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (summary disposition of habeas petition appropriate where allegations are vague or conclusory)*; Accord Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970) ("The petition should set out substantive facts that will enable the court to see a real possibility of constitutional error.").

22

At PCR, the petitioner's counsel did cross-examine trial counsel regarding the State's admitting the murder weapon and projectile, as well as one point where the State used what "appeared" to be leading questions (app. 593–94). But where the testimony elicited from the State's purported leading questions was otherwise properly admissible testimony of a qualified crime scene investigator's interpretation of blood, this allegation cannot warrant habeas relief. Neither can the chain of custody allegation where the undefined items were obviously admissible as direct evidence of the victim's cause of death and where the record is void of any meritorious challenge to the items' chain of custody. *Hayes v. York*, 311 F.3d 321, 327 (4th Cir. 2002). On the issue of the murder weapon specifically, trial counsel recalled that after the murder, the petitioner "sat down and put the gun down and waited for the police to arrive," indicating that there existed no plausible challenge to the chain of custody because the petitioner turned himself in (app. 594).

With respect to the petitioner's claim of improper hearsay testimony, PCR counsel pointed to the introduction of a bill of sale connecting the van found at the murder scene to the petitioner (app. 594–95). The van had paper tags because the petitioner had just purchased it from TNT Auto Sales (app. 222). Even if trial counsel objected based on hearsay, the evidence is otherwise admissible as a business record exception to the hearsay rule. S.C. R. Evid. 803(6). Trial counsel's purported failure to object cannot constitute ineffective assistance where the bill of sale was otherwise admissible under South Carolina law and did not prejudice the petitioner. *See Hayes v. York*, 311 F.3d at 327; and *Davis v. Cartledge*, C.A. No. 1:13-cv-2649-DCN, 2014 WL 5034629, at *7 (D.S.C. Oct. 7, 2014). The petitioner's claims of ineffective assistance of counsel are, in effect, an attempt to challenge the trial court's evidentiary rulings. *See Richardson v. Branker*, 668 F.3d 128, 142 (4th Cir. 2012) (when a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law, a federal court should be especially deferential to a state post-conviction court's interpretation of its own state laws

and noting that it is "beyond the mandate of federal habeas courts" to correct the interpretation by state courts of a state's own laws); and *Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008) ("Importantly, in considering federal habeas corpus issues involving state evidentiary rulings, 'we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding.'").

Furthermore, defense counsel's failure to object in any circumstance is to be viewed with the deference afforded tactical decisions made during trial. *See Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002) ("Because it may be tempting to find an unsuccessful trial strategy to be unreasonable, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689) (additional internal citations omitted)); *Sexton v. French*, 163 F.3d 874, 887 (4th Cir. 1998) (tactical decision cannot be second-guessed by court reviewing a collateral attack). Therefore, trial counsel's failure to object comprises a calculated trial-time decision that is sustainable unless both incompetent and prejudicial. *Fitzgerald v. Thompson*, 943 F.2d 463, 468–69 (4th Cir. 1991). The PCR court found "that [c]ounsel's decisions were based on his experience as trial counsel, and [ ] that counsel acted reasonably, and followed a reasonable trial strategy for what was a very difficult case to defend, and [ ] was not deficient in this respect." Nor did the PCR court find prejudice suffered by counsel's applying trial strategy (app. 629–30). Consequently, habeas relief is not warranted. *See Harrington,* 562 U.S. at 104; and *Owens v. Warden of Perry Correctional Inst.*, C.A. No. 5:14-cv-03685-RBH, 2015 WL 3871195, at *20 (D.S.C. June 23, 2015) ("Additionally, it has been stated that often 'seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained

of, resulting in more harm than good.'") (two internal quotation marks omitted). With respect to a habeas court's after-the-fact analysis of trial strategy, the United States Supreme Court has stated, "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The Supreme Court also noted: "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.*

Our Court of Appeals has also held that deference will be given to a trial counsel's reasonable or plausible strategic decisions, particularly where there is no clear showing of prejudice to a petitioner from such strategy. *See Lovitt v. True*, 403 F.3d 171, 181 (4th Cir. 2005) ("Therefore, '[t]he best course for a federal habeas court is to credit plausible strategic judgments.' To do otherwise would be a transparent misuse of the habeas court's power of hindsight.")(citations omitted). *See also Curry v. Warden*, C.A. No. 6:07-2933-HFF-WMC, 2008 WL 3887648, at *11 (D.S.C. Aug. 21, 2008) (finding a petitioner was not entitled to habeas relief on claim of ineffective assistance of counsel for failure to object to prosecutor's statement in closing argument where counsel testified as to his strategic reasons for not objecting).

### Failure to Challenge Dash Cam Video and Petitioner's Confessions

In his "supporting facts" numbers one and five, the petitioner claims that trial counsel failed to move to suppress the petitioner's voluntary statements to law enforcement. He also states that trial counsel should have better challenged the introduction of the responding officer's dash cam video of the scene because the officer did

not have simultaneously operating audio recording equipment at the time of his arrival (doc. 1 at 18; app. 610–11),

Insofar as the petitioner may allege that he was denied a suppression hearing on the dash cam video, that claim is not cognizable in federal habeas, as the petitioner has been afforded a full and fair opportunity to litigate this claim in state court. *Stone v. Powell*, 428 U.S. 465, 494 (1976). Additionally, nothing about the dash cam video indicates that it was not otherwise admissible. *Hayes*, 311 F.3d at 327. The video constitutes a piece of relevant evidence contemporaneous with the testifying officer's arrival on the scene (app. 126–28, 131–35). The video is not required by any rule of evidence to have sound, nor is the introduction of an officer's body microphone recording required by the rules governing the petitioner's prosecution. Trial counsel had the opportunity to cross-examine the relevant witness about the contents of the video and his securing of the crime scene (app. 137–47). In fact, the trial record shows that counsel and the State stipulated to which parts of the video would not be shown to the jury (app. 122–23, 134). Specifically, the trial transcript indicates that the Assistant Solicitor stated to the trial court: "Okay, defense counsel and myself agreed that kind of to stop that at that point and stipulated there's a lot of unnecessary stuff" (app. 134). Neither a constitutional deficiency nor ineffective assistance can be identified in trial counsel's handling of the crime scene video, as similarly indicated by the PCR court in its dismissal of all claims. *See Smith v. Padula*, 444 F. Supp. 2d at 539 (D.S.C. 2006).

With respect to the petitioner's confessions, full *Jackson v. Denno*[6] hearings were conducted on each statement in order for the trial court to rule *in limine* on the

---

[6]In *Jackson v. Denno*, 378 U.S. 368, 377 (1964), the Supreme Court required trial courts to "make a preliminary determination regarding a confession offered by the prosecution and exclude it if in no circumstances could the confession be deemed voluntary." The Supreme Court based this requirement on a defendant's due process right to not be found guilty based in whole or in part "upon an involuntary confession" and defendant's right to object to the use of the confession. *Id*. at 376–77.

voluntariness of those statements (app. 71–95). The first hearing revealed that the petitioner was taken into custody and into an observation room, he was fed and given coffee, he was read his rights, and then he voluntarily provided a statement that the trial court ruled admissible over defense counsel's objection. The trial court reasoned that "the witness exhibited understanding of the situation, his conduct was such which you would expect from someone in the circumstances understanding the situation they were in and wanting to discuss as they did in this particular witness. Certainly the defendant was in custody therefore the necessity of the *Miranda* warnings" (app. 86). The second *Denno* hearing involved the spontaneous statement made by the petitioner immediately upon the first officer's arrival on scene (app. 87–95). The trial court ruled it admissible because "from the officer's testimony the defendant approached him and made a voluntary statement. There was no necessity for any *Miranda* warnings. There wasn't an opportunity for any *Miranda* warnings. There wasn't any reason to give this person any *Miranda* warnings obviously until he made the voluntary statement to the police as to his involvement in this particular matter" (app. 94). "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda v. Arizona*, 384 U.S. 436, 478 (1966); *see also United States v. Harrison*, 667 F.2d 1158, 1160 & n. 5 (4th Cir. 1982) (defendant's spontaneous statement—"You got me."—upon approach and initial question by law enforcement agent was a voluntary statement).

Counsel's challenging the admission of the petitioner's statements by engaging in these *Jackson v. Denno* hearings shows adequate representation and does not warrant habeas relief. *See Sexton*, 163 F.3d at 887 (4th Cir. 1998) (tactical decision cannot be second-guessed by court reviewing a collateral attack); *Bell v. Evatt*, 72 F.3d 421 (4th Cir. 1995) (standing alone, unsuccessful trial tactics neither constitute prejudice nor definitively prove ineffective assistance of counsel). Therefore, the petitioner is not entitled to federal habeas relief on this ground.

### Inadequate Pre-trial Consultation Regarding Petitioner's Mental Health

The petitioner next asserts that his trial did not adequately investigate the petitioner's previous non-court-ordered mental health evaluations and did not inform the petitioner of his rights prior to his criminal responsibility evaluation (doc.1 at 18). However, the record reflects that counsel adequately delved into any potential mental health defense before trial. Notably, trial counsel consulted with Dr. Donna Schwartz-Watts to determine if the facts supported any potential insanity-based defense. This investigation revealed that no such defense was supported by any circumstance leading to the petitioner's commission of the murder [7] (app. 585). This investigation left trial counsel with "no defense" given the state's substantial evidence. He was left with the trial strategy of "a wink and a nod" and attempted to portray to the jury that "it kind of looks like an accident" without explicitly being able to state it (app. 591). Taking the entirety of the petitioner's and trial counsel's testimony on the pursuit of a mental health defense into account, the PCR court ruled "that counsel acted reasonably and within professional norms." (app. 629). In so reasoning, the PCR court cited *Jeter v. State*, which held that in order to find counsel ineffective for failing

---

[7]Trial counsel's full testimony reveals the initial angle he attempted to further with the help of Dr. Schwartz-Watts:

> Factually what, what happened was he and Ms. [C]arma were in a relationship and things started to deteriorate for him. He had just been released from Department of Corrections after 11 year prison sentence. Just looking at some of these factors, he was working one, sometimes two jobs trying to support her and her children. I think she had three children with her. They'd come from Alabama to Myrtle Beach to be with him. He was working, like I said, several jobs trying to provide for her. In fact, . . . she was the person to whom the pay check was made out to but he was the person actually going in and doing the work. At some point there was a break up and he named some potential witnesses. I think Wendy Price was one of the witnesses here. She is a pastor, she calls herself a pastor, in Atlantic Beach, and she got involved in this relationship. I don't know if she was qualified as a relationship expert or marital counselor, relationship counselor, or anything like that but a lot of what she did led to the break up and I thought that maybe there was some type of psychological mental break down as a result of the two of them, as a result of the two of them breaking up.

(App. 585–86).

to request a competency hearing, an applicant must show that a reasonable probability exists that he would have been found incompetent at the time of his trial or plea. Counsel may reasonably rely on his own perceptions in deciding if a client is competent to stand trial. 417 S.E.2d 594, 596 (S.C. 1992).

The entirety of the state court record supports the PCR court's dismissal of this claim. Nothing in the record indicates the petitioner did not appear competent, and trial counsel participated in a pretrial hearing pursuant to *State v. Blair*, 273 S.E.2d 536, 537–38 (S.C. 1981) (a competency to stand trial hearing is required where a defendant has history of mental health treatment). During that hearing, forensic psychiatrist Dr. Douglas Morris testified that the petitioner was "criminally responsible and able to conform [his] conduct" in addition to being competent to stand trial. Dr. Morris examined the petitioner both in September 2007 and immediately prior to his March 2008 trial; both examinations yielded the same finding of competence (app. 43–44). Dr. Morris went on to testify that even though the petitioner may have exhibited adjustment problems in reaction to stressful events occurring in his life at the time of the shooting, that any related diagnosis "was based primarily on [the petitioner's] increased symptoms of depression in the days to weeks shortly after his arrest" and that they "resolved." (app. 45–46). In making his findings, Dr. Morris relied upon police reports, witness statements, hospital records from past admissions, social work assessments and detention center records, as well as a personal two-hour interview (app. 57).

Although the petitioner testified at PCR that he was evaluated by prison personnel five days after the shooting in response to an alleged suicide attempt, the petitioner failed to relay this to his counsel at any time before or after his trial (app. 597). The PCR court gave trial counsel's testimony "great weight" on this issue and specifically found the petitioner's testimony unpersuasive and without credit. The PCR court's credibility finding constitutes an additional factual determination entitled to deference in this

action. *Cagle v. Branker*, 520 F.3d 320, 324 (4ᵗʰ Cir. 2008) (citing 28 U.S.C. § 2254(e)(1) (for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear)); see 28 U.S.C. § 2254(e)(1); *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them"). The petitioner may overcome this presumption of correctness only by showing "clear and convincing evidence to the contrary," which the petitioner has failed to do. *Wilson v. Ozmint*, 352 F.3d 847, 858–59 (4ᵗʰ Cir. 2003) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (internal citations omitted)).

Finally, the petitioner's complaint that counsel did not adequately advise him of his rights prior to any competency evaluation fails. The admission of Dr. Morris' psychiatric report was done *in camera* and did not serve as substantive evidence against the petitioner (app. 39-40). It is only when the State initiates the admission into evidence of statements made by a criminal defendant during a psychiatric examination for the purpose of establishing guilt that implicates a criminal defendant's Fifth and Sixth Amendment rights. *Estelle v. Smith*, 451 U.S. 454, 463–69 (1981) (statements made during competency evaluation and used by State as evidence during sentencing phase of a capital murder trial ruled in violation of petitioner's privilege against self-incrimination).⁸ The routine psychiatric evaluation at issue was completed and introduced simply as a means for the court to make a competency determination. The petitioner's evaluation was not introduced by the State as a means to persuade jurors of his guilt. Hence, trial counsel cannot be found ineffective for allegedly failing to give clear notice to the petitioner that the

---

⁸Moreover, while it cannot be conclusively determined from the record in the instant case that trial counsel requested a psychiatric evaluation, where a criminal defendant's counsel requests or consents to a psychiatric evaluation, *Estelle*'s requirement that the defendant be Mirandized is not applicable. *See McWee v. Weldon*, 283 F.3d 179, 189 (4ᵗʰ Cir. 2002) (*Estelle v. Smith* "inapposite because McWee's attorneys requested the 1992 psychiatric evaluation."); and *Woomer v. Aiken*, 856 F.2d 677, 681–82 (4ᵗʰ Cir. 1988).

prosecution may utilize statements made during that evaluation.  *See Savino v. Murray*, 82 F.3d 593, 603–04 (4th Cir. 1996).

Based upon the record before him, the PCR court reasonably found that the petitioner failed to carry his burden of showing *Strickland* deficient performance and prejudice regarding his pursuit of mental health evaluations.  By all accounts, counsel took care to administer the proscribed trial procedures regarding his client's mental health. His pre-trial investigation did not reveal any real competency issue.  *Sexton* , 163 F.3d at 888; *Accord Campbell v. Coyle*, 260 F.3d 531, 553 (6th Cir. 2001) ("In the case before us, trial counsel engaged in an extensive investigation of Campbell's history and current mental state. They interviewed family members, had Campbell evaluated by a clinical psychologist, and consulted with two mitigation specialists.  The decision of Campbell's trial counsel to forgo a particular investigation, into Campbell's childhood medical records, therefore, must be evaluated with 'a heavy measure of deference to counsel's judgment.'").  The petitioner cannot show that the denial of post-conviction relief was based upon an unreasonable determination of the facts or an unreasonable application of federal law.  The petitioner has made no showing to discount these findings, and no prejudice is readily apparent.  Thus, the petitioner is not entitled to relief under 28 U.S.C. § 2254(d)(1) as to this claim.

***Failure to Investigate Potential Witnesses***

The petitioner also alleges that counsel failed to call relevant witnesses to negate malice.  Within his habeas petition, the petitioner fails to name these witnesses or provide the substance of their testimony had it been offered at trial (doc. 1 at 18).  Although the petitioner testified at PCR that there were "several readings on the internet stating of witnesses who were there during the shooting" who presumably could have been interviewed as potential witnesses at trial, (app. 615–17), the petitioner did not present any of these purported witnesses in state court when he had the opportunity to further evidentiary support on this claim. *See Bannister v. State*, 509 S.E.2d 807, 809 (S.C. 1998)

("a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial"); *Glover v. State*, 458 S.E.2d 538, 540 (S.C. 1995) ("mere speculation" as to likely witness testimony does not alone satisfy the burden of showing prejudice).   On federal habeas review, "unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing." *Nickerson v. Lee*, 971 F.2d at 1136.  Without factual support, the petitioner fails to make a coherent claim of constitutional error and the allegation remains too undefined to warrant relief.  *Jones v. Polk*, 401 F.3d 257; *Aubut v. Maine*, 431 F.2d at 689 ("The petition should set out substantive facts that will enable the court to see a real possibility of constitutional error."). Moreover, the present review is limited to the record before the state court, and the state court record is silent as to these alleged defense witnesses. *See Cullen v. Pinholster*, 131 S.Ct. at 1398.  Where a factual basis for the present claim has not been established in state court, relief is not now warranted, especially absent any new evidentiary showing.

The PCR record reflects that counsel did pursue available defense witnesses even without the availability of any solid defensive theory (app. 585–89).   Where a significant investigation has been conducted, and a habeas petitioner challenges the strong presumption that the attorney's investigation was reasonable, a court must look to the specific facts of the case, as well as the decisions of the defendant that may have hindered trial counsel's preparation. *Campbell v. Coyle*, 260 F.3d at 553.  The petitioner provided names of potential witnesses who were "involved in Atlantic Beach politics" and given that "this was a very difficult case for that community" counsel decided "it was probably best to avoid these people if possible" (app. 586).  Similarly, the petitioner named family members as potential witnesses, but decided that "it would [not] be to his [client's] advantage to put his brother on the stand because his brother basically said 'You don't need to be over there, come down to Georgetown,' and tr[ied] to talk him out of trying to confront the lady;

32

and it was probably testimony that needed to be avoided" (app. 586–88).  At the PCR hearing, the petitioner also named "a young lady by the name of Emily who was at the scene before the accident" and "Pat" as potential witnesses (app. 574).  Even if the petitioner gave counsel a list of potential witnesses, it lacked specificity, and trial counsel "didn't have anything [in the way of information about Pat] other than that and didn't have any way of trying to track down a person with just a name" (app. 588).  Furthermore, by the petitioner's trial testimony, "Pat" only "came outside after the fact" and did not witness what took place (app. 353).  Given the deference afforded the PCR record on habeas review under *Harrington v. Richter*, as well as to trial strategy and tactical decisions, the petitioner is not entitled to relief on this claim where his potential witnesses either could not be located to due to lack of the petitioner's knowledge, would not assist in the petitioner's defense, or otherwise were not present on the scene at the time of the murder.

Furthermore, no prejudice is readily apparent from the failure to call other witnesses given the overwhelming evidence against the petitioner at trial.  As a whole, trial counsel did not have a clear defensive topic to which any of these purported witnesses could testify other than to expose the petitioner's character and remorse (app. 588).  The petitioner himself testified (app. 307–89).  No other witness' account would negate the fact that the petitioner turned himself in as the shooter, especially when compounded with the lack of evidence of a struggle or other means to lessen the murder charge.  The petitioner stated during trial that there was no argument prior to the shooting (app. 349).  The petitioner cannot show that the denial of post-conviction relief[9] was based upon an unreasonable determination of the facts or an unreasonable application of *Strickland*. Even

---

[9]Even though the petitioner raised this ground at the PCR hearing *pro se*, the PCR court did not specifically rule on this issue and instead made a sweeping finding in the order of dismissal that trial counsel's strategy caused the petitioner no prejudice and that "any additional allegations raised in the Application or amendments are waived because no evidence was presented" (app. 629–30).

33

where a state court fails to provide any particular rationale for its decision on a particular point, the reviewing federal court must still apply the deferential standard mandated by Congress. *Fullwood v. Lee*, 290 F.3d 663, 677 (4th Cir. 2002). Given counsel's comprehensive decision-making indicated by the state court record and lack of prejudice, petitioner is not entitled to relief on this claim.

### Failure to Investigate Fingerprinting Evidence

The petitioner alleges that trial counsel should have investigated the presence or absence of fingerprints on the murder weapon (doc. 1 at 18). Habeas review is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S.Ct. at 1398. On this topic, the state court record is limited. Trial counsel's cross-examination of the State's expert in firearm examination and tool marks, Special Agent Paavel, affirmed that the firearm was likely fingerprinted because he found black fingerprinting powder on the weapon[10] during his investigation (app. 273–74).

First, no prejudice or deficient performance can result on this claim given the circumstances. An attorney must, at a minimum, "conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial." *Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir. 1968). There is no indication in the record that counsel did not adequately reflect upon his trial strategy and the potential evidence. Since the petitioner admitted to shooting the victim and turned himself into police at the crime scene, it is expected that his fingerprints would be on the gun.

Compare the facts of the case to the petitioner's denial that he pulled the trigger at trial, instead stating the gun accidentally fired because "when Carma pushed [his]

---

[10]Special Agent Paavel also testified that it may be possible to pull latent prints from a fired cartridge case or a misfired cartridge case, but that "would not be something that [Paavel] would initiate" (app. 275–76).

hand back the gun went off" (app. 351; *see* app. 384). Even the petitioner's ballistics proffer did not support his testimony. Ballistics expert Christopher Robinson conceded on cross-examination at PCR that the absence of gunpowder residue on the victim's hands discredited the theory that the petitioner and the victim struggled over the gun (app. 552–54). He also conceded that no ballistics evidence demonstrated that the victim pulled the trigger (app. 555–56). If ballistics evidence discredited any theory of a struggle or that another person pulled the trigger, then fingerprint evidence could similarly be discredited given the facts of the case. The petitioner fails to make any showing as to how counsel's failure to pursue or present fingerprint evidence caused prejudice given the strong nature of the State's case because he fails to consider that any fingerprint evidence obtained in discovery was merely inculpatory.

Also, regardless of whether a struggle over the pistol ensued, it would not be unexpected that the victim's prints may be on the gun given the apparent proximity of the shot fired. The petitioner fired a close range, near-skin-contact shot entering the victim's left cheek and exiting at an upward forty-five degree angle (app. 186–87). The victim could have put her hands up in defense prior to the gunfire (*See* app. 500), but she did not bear any defensive wounds (app. 193). No eyewitness saw her fight as the petitioner held her against his van (app. 208–11). There is no question that the petitioner possessed the gun and used it to threaten the victim prior to her death, so the introduction of any fingerprint evidence ostensibly would not alter the outcome of the trial.

Second, trial counsel testified that he built his defensive strategy upon evidence that the petitioner "went out and purchased this gun less than an hour before and he went to the church where she would be and when she was walking up to the church he goes up and talked to her" and then shot her without argument (app. 590, 349). The aggregate of the evidence shows that there was no struggle that would have enabled the petitioner to pursue a heat of passion defense at trial. A tactical decision to omit

fingerprinting evidence with a large potential to further the State's case cannot be second-guessed by the court reviewing a collateral attack. *Sexton*, 163 F.3d at 887.

Given the overwhelming evidence of guilt and the deference afforded trial counsel's representation in light of the PCR court's denying relief, the petitioner failed to carry his burden of showing deficient performance and prejudice under *Strickland*. Thus, this claims fails and the petitioner is not entitled to relief.

### Ineffective Assistance of PCR Counsel

The petitioner alleges within the sum of his ineffective assistance claims that his PCR counsel failed to address each of the petitioner's specific complaints at the evidentiary hearing (doc. 1 at 17). This claim is generally improper in the habeas setting. The Fourth Circuit has held that alleged infirmities in a state post-conviction action are not matters that may be addressed in federal habeas actions. 28 U.S.C. § 2254(i); *Bryant v. Maryland*, 848 F.2d at 493. The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculations. *Id*. Any claim against appellate counsel stemming from an occurrence in the petitioner's state PCR action fails to state a claim upon which relief may be granted, and the respondent is entitled to summary judgment on this issue.

To the extent the petitioner argues that his PCR counsel's ineffectiveness is cause to excuse the procedural bar to the foregoing ineffectiveness of trial counsel claims, he has failed to show the claims have merit, as discussed above. In *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012), the Supreme Court of the United States carved out a "narrow exception" that modified the "unqualified statement in *Coleman* [*v. Thompson*, 501 U.S. 722, 754-55 (1991)] that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." In *Martinez*, the Court

> read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318-19, 1320-21).  The Court in *Martinez* also noted:

> When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

132 S. Ct. at 1319.

Moreover, the PCR record shows that Judge Russo allowed the petitioner great leeway to address additional claims *pro se* during the hearing (app. 604–20).  During this colloquy, the petitioner addressed the following claims:  (1) his belief trial counsel did not properly preserve specific objections, which Judge Russo refuted with the record's revelation that the specific objection complained of was sustained in the petitioner's favor (app. 606–10); (2) his belief that trial counsel failed to move to suppress the petitioner's voluntary statements to law enforcement (app. 610–12), but two *Jackson v. Denno* hearings were conducted pre-trial on those issues (app. 73–95); (3) his complaint that trial counsel did not object to the admission of a silent dash cam video recording of law enforcement's arrival on the scene and the petitioner's surrender, where that video was played in tandem with the arriving officer's trial testimony (app. 612–14); (4) his claim that counsel failed to pursue fingerprint evidence from the gun in furtherance of the petitioner's contention that the victim touched the gun (app. 614–15); (5) his complaint that trial counsel failed to

37

present defense witnesses whom the petitioner identified by their having given statements within newspaper clippings covering the murder (app. 615–18); and (6) his claim that trial counsel did not look into the petitioner's mental state following the murder, to which Judge Russo pointed out that earlier PCR testimony revealed that the petitioner did not inform trial counsel that he may have received any mental health treatment immediately following his arrest (app. 618–20).  As discussed above, these claims lack merit when viewed under the *Strickland* standard, and the PCR court reasonably denied relief on each claim. Accordingly, the plaintiff has failed to show cause for his procedural default. Furthermore, where the petitioner claims that his PCR counsel chose not to present specific issues on his behalf, but where the petitioner was able to present those issues on his own, no prejudice can result from PCR counsel's omission.  Thus, even under the *Strickland* standard, PCR counsel's representation does not warrant relief in this circumstance.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 12) be granted.  It is also recommended that the district court deny a certificate of appealability.  The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

December 3, 2015
Greenville, South Carolina

38

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).